*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TODD BRIGGS, Personal Representative of the Estate of OMARI BELL,

UNPUBLISHED
March 9, 2023

Plaintiff-Appellee,

v

No. 358641
Kalamazoo Circuit Court
LC No. 2020-000143-NI

JEFFREY KNAPP,

Defendant-Appellant,

and

GABRIEL CARMONA and ADRIAN ROJO,

Defendants.

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

K. F. KELLY, J. (*dissenting*).

I respectfully dissent and would conclude the trial court erred when it denied defendant's motion for summary disposition. The evidence demonstrated that the decedent was dressed in dark clothing and walking in the dark along a highway that did not permit pedestrian access when the accident occurred. Although there was no evidence that defendant was distracted, the trial court held—on the basis of conjecture and speculation—that questions of fact existed for the jury regarding whether defendant properly exercised his standard of care. However, because defendant was not required to disprove plaintiff's hypothetical scenarios in which he may have been distracted, and because plaintiff failed to produce evidence creating a genuine issue of material fact for trial, I respectfully dissent.

## I. FACTUAL BACKGROUND

On November 6, 2019, at approximately 9:30 p.m., the decedent, Omari Bell, was killed in an accident after he was struck by two vehicles: the first driven by defendant, Jeffrey Knapp, and the second vehicle driven by defendant, Gabriel Carmona. Knapp testified that he was driving alone, heading home from a night class. He had not been drinking or using drugs on the day of

the crash. He described the traffic conditions as "pretty light," was using cruise control, and did not recall any cars immediately in front of him at the time of the crash. It was dark outside, but the weather was fine. Knapp had his standard headlights on and stated the lights were working. Knapp had his phone in the car on the "docking station with maps up." The docking station was clipped to the heater vent, and Knapp stated he was not using his phone to text or make calls while driving.

Knapp stated that while driving, "all of a sudden there was an impact to the vehicle." After the impact, he pulled over to the shoulder of the road. He stated he had no warning that the crash was going to occur and had no time to brake or swerve. Knapp testified he never saw Bell and did not know in what direction Bell was walking. According to Knapp, he did not think that he could have done anything to avoid the crash.

Carmona testified that it was dark outside at the time of the accident. He also stated the accident happened "very quickly." Carmona stated that there was a car in front of him, which seemed to be driving in a "normal" way, and it had its lights on. There was also a trailer in the left lane. He was in the right lane when something seemed to fall in front of him. He had no time to swerve or apply his brakes and hit Bell before he "knew it." Carmona initially thought it was a deer. Like Knapp, Carmona stated that he could not have done anything differently to avoid the crash. The vehicle in front of Carmona did not seem to do "any quick maneuvering" before the crash, and Carmona did not see any vehicle, including Knapp's vehicle, strike Bell.

Sergeant Brandon Davis also testified that it was dark outside, and there were no lights in the area, not even ambient lighting from the city spilling onto the freeway. Sergeant Davis also noted that Bell was dressed in "dark-colored black clothing," including a black coat, black jeans, and dark navy blue athletic shoes. Sergeant Davis saw nothing to indicate that either driver drove outside the right lane of travel, and the roadway showed no tire marks on the roadway, which "would be indicative that [the drivers] didn't see the pedestrian before impact" or that at least there was no roadway evidence that they saw him. According to Sergeant Davis, Knapp and Carmona were not in violation of any provision of the Motor Vehicle Code. Ultimately, according to Sergeant Davis, the circumstances of the crash were "straightforward" in terms of what happened. That is, in Sergeant Davis's view, the pedestrian seen walking westbound shortly before the accident had crossed the highway and been hit on the eastbound side of the highway. The drivers would not have expected to see a pedestrian, at night, all in dark clothing.

In the trial court, in response to Knapp's motion for summary disposition, plaintiff argued that Knapp was comparatively negligent because Knapp set his cruise control and surmised he was not paying attention to the road because he did not see Bell before the accident even though two other witnesses reported seeing him. For its part, the trial court denied Knapp's motion because "there was an argument being made with regard to [Knapp's] GPS being on and some implication that that might have distracted him," and "there is the implication that at least at some point he may have been visible, and that's certainly something that a trier of fact could latch on[]to . . . ." This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Sutariya Props, LLC v Allen & I-75, LLC*, 331 Mich App 521, 528; 953 NW2d 434 (2020). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (quotation marks and citation omitted).

III. ANALYSIS

To establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to establish: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020) (quotation marks and citation omitted). " 'Duty' is a legally recognized obligation to conform one's conduct toward another to what a reasonable man would do under similar circumstances." *Finazzo v Fire Equip Co*, 323 Mich App 620, 625; 918 NW2d 200 (2018). Generally, the question of whether a duty exists is a question of law for the court. *Id*. "Once the question of duty has been determined, the question whether a defendant was negligent, i.e., whether the defendant breached its duty, is generally a question of fact." *Boumelhem v Bic Corp*, 211 Mich App 175, 181; 535 NW2d 574 (1995). However, if reasonable minds could not differ, a court may determine whether a defendant's conduct fell below the applicable standard of care. See *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000).

Typically, under the doctrine of comparative negligence, a plaintiff's damages are reduced by the proportion by which a plaintiff's own conduct contributed to his or her injuries. See MCL 600.2959; *Laier v Kitchen*, 266 Mich App 482, 496; 702 NW2d 199 (2005). However, a plaintiff may not recover noneconomic damages when a plaintiff's fault is greater than the aggregate fault of the others involved. MCL 600.2959; see also MCL 500.3135(2)(b) ("Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault.").

In the case of an accident between a motor vehicle and a pedestrian, in the absence of more specific statutory requirements, "it is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). "[T]he happening of the accident alone is not evidence of negligence of the defendant sufficient to take that question to the jury." *Gardiner v Studebaker Corp*, 204 Mich 313, 316; 169 NW 828 (1918). And "[o]ne is not negligent merely because he fails to make provision against an accident which he could not reasonably be expected to foresee." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935).

> It was not incumbent upon the defendants to guard against every conceivable result, to take extravagant precautions, to exercise undue care: but defendants were entitled to assume that others using the highway in question would under the

circumstances at the time use reasonable care themselves and take proper steps to avoid the risk of injury. [*Id.*]

Moreover, a driver's standard of care must take into account the "unique function" of a particular roadway, such as a highway designed "to move great volumes of traffic at relatively high speeds." *McGuire v Rabaut*, 354 Mich 230, 238; 92 NW2d 299 (1958).

Pedestrians generally enjoy "equal rights with automobiles in the use of public highways," but they are required to "exercise that care which, reasonably prudent persons would use for their own protection and preservation." *Buchel v Williams*, 273 Mich 132, 137; 262 NW 759 (1935). However, pedestrians typically are not permitted on "a limited access highway." MCL 257.679a(1). Moreover, a driver unaware of a pedestrian's presence is not bound to anticipate that a pedestrian "will come loping into his lane of traffic." *Gamet v Jenks*, 38 Mich App 719, 724; 197 NW2d 160 (1972). Of course, that is not to say that a driver may be "permitted to lower his head, close his eyes, and charge blindly . . . ." *McGuire*, 354 Mich at 235. At all times, a driver remains obligated to "exercise reasonable care under the circumstances." *Id*. Nevertheless, until a hazard is perceived, or until a hazard would have been apparent to "a reasonable man, considering pertinent surrounding circumstances of traffic and terrain," a driver has no duty to guard against or anticipate an unknown hazard. See *McGuire*, 354 Mich at 230 (examining driver's rights and duty when approaching an intersection with the right-of-way and when confronted with a subordinate driver, who fails to properly yield, at the intersection).

An emergency involves a situation that is "unusual or unsuspected." *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971) (quotation marks and citation omitted). An unusual event typically involves something that "varies from the everyday traffic routine," such as a phenomenon of nature like a blizzard. *Id*. The Michigan Supreme Court explained:

> 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected. A good example of this can be seen in *McKinney v Anderson*, [373 Mich 414; 129 NW2d 851 (1964),] supra, where defendant rear-ended a plaintiff's car which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, defendant first saw plaintiff's taillights when he was 400 feet away. However, defendant did not clearly see the peril of plaintiff's stopping until he was about 100-200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant. [*Id*.]

Notably, the question of proximate cause must also be examined in light of the emergency presented. *DePriest v Kooiman*, 379 Mich 44, 47; 149 NW2d 449 (1967); see also *McGuire*, 354 Mich at 240 ("Even had he looked, diligently, there was nothing he could have done, after discovery of the danger, upon these facts, to avoid collision. The deficiency in plaintiff's case lies in the area of proximate cause.").

It may well be that there has been negligence on the part of the arterial driver but that his permissible speed, and the traffic conditions, were then such that, even had he been alert, looked, discovered the danger, and responded instantaneously and properly, no action on his part could have averted collision once the subordinate driver came into his path. If this were the case his negligence in not properly observing or acting could not be a proximate cause of the accident. [*DePriest*, 379 Mich at 47.]

Turning to the facts of this case, the undisputed evidence demonstrated that Bell—a pedestrian dressed entirely in dark clothing—was walking on a limited access highway at night in an unlit area of the roadway. As a pedestrian, he had no right to be on a limited access highway. See MCL 257.679a. In contrast, according to Knapp's uncontradicted deposition testimony, Knapp was traveling in a designated lane of travel, and he was not exceeding the speed limit. As a motorist, Knapp was not required to guard against "every conceivable result" or to "take extravagant precautions"; rather, he was entitled to assume that others would use reasonable care themselves. See *Hale*, 271 Mich at 354. And as a motorist, Knapp could not be expected to anticipate that a pedestrian would enter his lane of traffic, a rule that holds particularly true given that Knapp was traveling on a limited access highway and that pedestrians do not have the right to be on a limited access highway. See *Gamet*, 38 Mich App at 724. Coming upon a pedestrian— clad entirely in dark clothing—in his lane of travel on a limited access highway, Knapp was, in other words, confronted with a sudden emergency—an unexpected peril—not of his own making. And the question of whether Knapp's conduct constituted a proximate cause of the crash must be judged in light of this emergency. See *McGuire*, 354 Mich at 230, 239-240; *DePriest*, 379 Mich at 47. In this regard, the testimony from Knapp and Carmona demonstrated that Bell was not visible on the roadway and that nothing could have been done to avoid the accident.

Under the trial court's reasoning, a fact-finder could conclude that Knapp was not being truthful when he denied being distracted because Knapp's testimony, while uncontradicted, was subject to a credibility determination. But this is not the standard when deciding a motion for summary disposition. When the nonmoving party produces evidence in support of the party's position, the "adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). Similarly, conjecture and speculation are never sufficient to create a genuine issue of fact for trial. *Meisner Law Group PC v Weston Downs Condo Assoc*, 321 Mich App 702, 723; 909 NW2d 890 (2017). Yet mere conjecture and speculation is all that the trial court relied on when denying defendant's motion.

And even assuming there was evidence from which a jury could conclude that Knapp failed to keep a proper lookout, plaintiff failed to present any evidence that Knapp could have done anything to avoid the accident. See *DePriest*, 379 Mich at 4; *McGuire*, 354 Mich at 240; *Gardiner*, 204 Mich at 316. In other words, missing from plaintiff's proofs is any evidence that Knapp should have seen Bell in time to take evasive action, stop his vehicle, or otherwise avoid the accident. Even viewed in a light most favorable to plaintiff, the evidence offered by the parties places a pedestrian dressed entirely in dark clothing, in Knapp's lane on an unlit, limited access highway where he would not be expected and where Knapp was driving at a lawful speed in an otherwise lawful manner on a highway with a speed limit of 70 miles per hour. On these facts, showing that Knapp's purported failure to keep a proper lookout was a proximate cause of the accident requires

some evidence of when Bell should have been visible to Knapp and whether Knapp had time to avoid the accident. See *McGuire*, 354 Mich at 239-240 (considering stopping distances and whether the accident was avoidable).

Plaintiff offered no such evidence. *None.* At most, plaintiff offered statements by two witnesses who saw a pedestrian walking westbound on the highway to assert that Bell would have been visible on the highway. Neither individual who called the police gave any indication that they had to stop when they saw the pedestrian or that they would have had time to stop, or otherwise avoid him, had he been in their lane of travel. Robbins's affidavit—which also suggests that Knapp could have seen Bell—similarly fails to provide any indication of when Knapp should have seen Bell or whether Knapp should have seen him in time to avoid the accident. Plaintiff's failure to present such evidence leaves Knapp's testimony uncontradicted that the accident could not have been avoided. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (noting nonmoving party's burden to respond to documentary evidence to establish that a genuine issue of disputed fact exists).

The trial court erred when it denied defendant's motion for summary disposition. I would reverse the order of the trial court and remand for entry of an order granting defendant's motion.

/s/ Kirsten Frank Kelly